**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-40267
(Summary Calendar)

_____


PARSLEY DAIRY FARM, A TEXAS GENERAL PARTNERSHIP;
JOE PARSLEY; MARTHA PARSLEY; MICHAEL PARSLEY;
JEFFREY PARSLEY; JOANN PARSLEY

                                        Plaintiffs-Appellees

                            versus

CARGILL INCORPORATED, ET AL

                                        Defendants

CARGILL INCORPORATED

                                        Defendant-Appellant


_____

Appeal from the United States District Court
For the Eastern District of Texas
(6:95-CV-577)

_____

November 8, 1996

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

     Defendant-Appellant Cargill, Inc., Cargill Grain Division,

(Cargill) appeals the district court's order denying Cargill's

Motion to Abate and/or Dismiss and Proceed to Arbitration (Motion).

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Finding that Cargill failed to assert its demand for arbitration in a timely fashion, we affirm.

## I.

## FACTS AND PROCEEDINGS

Plaintiffs-Appellees Parsley Dairy Farm, a Texas general partnership, and its partners, Joe Parsley, Martha Parsley, Michael Parsley, Jeffrey Parsley, and Joann Parsley (collectively the Parsleys), needed cottonseed to feed the cows on their dairy farm. Martha Parsley (Ms. Parsley) discussed the purchase of cottonseed with a Cargill salesman located in Minneapolis, Minnesota. Cargill had already purchased cottonseed from Armistead Gin Co., Inc. (Armistead) in Coushatta, Louisiana. Ms. Parsley and Cargill reached an oral agreement on the price, quantity, and quality of the cottonseed, and Cargill agreed that its truckers would deliver three separate shipments of cottonseed from Coushatta to the Parsley Dairy Farm in Texas. With or shortly after each delivery, Cargill sent Ms. Parsley a Sale Confirmation and Contract (Contract) which she signed but did not return.[1] Each Contract is a one page, preprinted document, on the front of which the particular shipment is described and on the back of which the terms and conditions of the sale are set forth. Specifically, the back

---

[1]The parties dispute whether the Sale Confirmation and Contracts accompanied each shipment or were received shortly thereafter; however, the resolution of this dispute is not necessary for us to decide the instant case.

2

of each Contract recites the following provision:

> The parties both agree that the <u>sole</u> remedy for resolution of all disagreements or disputes between the parties arising under this contract shall be arbitration proceedings under NGFA Arbitration Rules (<u>or under the Rules specified on the front of this contract, if different</u>). The decision and award determined by such arbitration shall be final and binding upon both parties.[2]

The front of each Contract refers to the National Cottonseed Products Association Rules (NCPA Rules), indicating that arbitration under the NCPA Rules provides the sole remedy for resolution of all disagreements or disputes between the parties arising under the Contract.

Some of the Parsleys' cows became sick and died after eating the cottonseed purchased from and delivered by Cargill. The Texas Feed & Fertilizer Control Service ordered Cargill to recall the cottonseed and ruled Cargill in violation of the Texas Feed Act for selling adulterated feed. On May 4, 1995, Cargill received written notice of the Parsleys' claims under the Texas Deceptive Trade Practices Act. Just two months later, on July 14, 1995, the Parsleys filed suit in Texas state court against Cargill and Armistead, alleging under various theories that Cargill and Armistead produced, manufactured, distributed, or sold contaminated cottonseed. Cargill removed the case to federal court and answered, seeking contribution or indemnity, or both, against

---

[2]Emphasis added.

3

Armistead. On January 22, 1996--262 days after Cargill had received written notice of the Parsleys' claims and 191 days after the Parsleys had filed suit in state court--Cargill filed a Motion to Abate and/or Dismiss and Proceed to Arbitration, asserting for the first time its demand for arbitration. The district court denied Cargill's Motion, and Cargill timely appealed.

## II.

## ANALYSIS

A. STANDARD OF REVIEW

We review *de novo* the district court's decision not to compel arbitration.[3]

B. NCPA RULES 93 AND 84

As earlier noted, each of the Contracts designates arbitration under the NCPA Rules as the sole remedy for resolution of all disputes between the parties arising under the Contracts. The NCPA Rules recognize that agreements may be made and disputes may arise between parties, some of whom may not be members of the National Cottonseed Products Association (Association). In particular, NCPA Rule 93 provides as follows:

> No non-member may demand an arbitration against a member of this Association.
> If a dispute arises between a member and a non-member, arbitration may be held if the member originates the request and the non-member is agreeable thereto. In such cases, the non-member must either (a) apply for

---

[3]Snap-On Tools Corp. v. Mason, 18 F.3d 1261, 1264 (5th Cir. 1994); Catholic Diocese of Brownsville v. A.G. Edwards & Sons, Inc., 919 F.2d 1054, 1056 (5th Cir. 1993).

4

> membership, accompanying such application by the prescribed membership and arbitration fees, or (b) deposit with the Association the regular arbitration fee plus a special fee . . . .[4]

Cargill is a member of the Association, but the Parsleys are not. The Parsleys, however, are parties to the Contracts which contain the arbitration agreements. They became contractually bound by the arbitration clauses by virtue of Ms. Parsley's (1) signing the Contracts, (2) failing to question or object to the arbitration clauses in the Contracts, and (3) accepting the shipments of cottonseed. By thus binding themselves to arbitrate under the NCPA Rules, the Parsleys became Rule 93 non-members "agreeable" to arbitrate under the NCPA Rules. As such, the Parsleys must be deemed to have agreed to take all steps reasonably required by the NCPA Rules, explicitly or implicitly, to facilitate arbitration.

Even though, as non-members, the Parsleys could not initiate arbitration, they are nonetheless subject to <u>all</u> of the applicable NCPA Rules. Thus they are entitled to enforce Rule 84's requirement that the <u>member</u> who has been notified of a complaint and who attempts to invoke arbitration must assert his right within ninety days after that right has accrued.[5] Even if we assume the

---

[4]National Cottonseed Products Association General Rules, Chapter I, Article 7, Rule 93.

[5]Rule 84 provides: The member demanding an arbitration will be referred to as the complainant. . . . Demand for an arbitration shall be made by letter or telegram addressed to the Secretary of the Association within 90 days after the complainant's right to arbitrate has accrued. National Cottonseed Products Association General Rules, Chapter I, Article 7, Rule 84.

5

facts in the light most favorable to Cargill, i.e., that (1) Cargill's right to arbitration did not accrue, and thus the ninety days did not begin to run, until Cargill received written notice of the Parsleys' claims, (2) the initial ninety-day period was interrupted by the Parsleys' filing suit on the seventy-first day after Cargill received written notice of the Parsleys' claims, and (3) the ninety-day clock was thus re-set at day-one and commenced to run anew from the date suit was filed, Cargill still would have failed to assert its demand for arbitration within ninety days as prescribed by Rule 84. Indeed, Cargill did not attempt to assert its right to arbitrate until it filed its Motion 262 days after receiving written notice of the Parsleys' claims and 191 days after the Parsleys filed suit. Until it finally filed that Motion, Cargill slept on its right to demand arbitration. Cargill's receipt of written notice of the Parsleys' claims--or, at a minimum, service of the Parsleys' suit--should have been a wake-up call to Cargill, alerting it to the fact that a dispute existed and that arbitration had to be demanded in the manner and within the time set forth in the rules that its own contract form specified.

Cargill has no excuse for its failure to demand arbitration timely. Cargill provided the Contracts, which mandate arbitration subject to the NCPA Rules, and Cargill is a member of the Association. As such, Cargill is presumed to be familiar with the NCPA Rules and is certainly in a better position than the Parsleys, who are not members, to know that a member desiring arbitration

6

must demand it in a timely fashion.  Furthermore, the Parsleys' filing suit in no way inhibited Cargill's ability to demand arbitration.  And Cargill's awareness of the suit is shown by its prompt removal to federal court.  If Cargill wanted arbitration, it should have invoked it in accordance with the rules of its own association.

Cargill's argument that by filing suit the Parsleys renounced their status under the NCPA Rules as non-members agreeable to arbitrate and thereby precluded themselves from invoking any other NCPA Rule to avoid arbitration, in particular Rule 84's ninety day limitation, is logically flawed.  Even if we accept *arguendo* Cargill's argument that the Parsleys violated the arbitration agreement by filing suit, at worst the Parsleys' action is a violation of the provision requiring arbitration; but it is not conceivably a renunciation of applicability of the NCPA Rules when and if Cargill should seek arbitration <u>after</u> such a violation by the Parsleys.  Cargill cannot be heard to insist on application of the NCPA Rules to obtain arbitration while arguing out of the other side of its mouth that the Parsleys have renounced <u>their</u> rights under those rules.  If the NCPA Rules apply at all, they apply in their entirety.

In a last-ditch effort to salvage arbitration, Cargill emphasizes the strong public policy favoring arbitration.  This public policy, however, cannot be invoked to cure Cargill's

7

unreasonable delay--at least 101 days beyond the deadline under NCPA Rule 84--in demanding arbitration as required by this rule, especially when the delay was wholly attributable to Cargill's inaction. Cargill has no one to blame but itself for its predicament. There may be circumstances in which the public policy favoring arbitration could be the factor that pulls chestnuts out of the fire, but that policy cannot magically resurrect Cargill's chestnuts from these cold, dead ashes 191 days after the fire burned out. For the foregoing reasons, the district court's order denying Cargill's Motion to Abate and/or Dismiss and Proceed to Arbitration is

AFFIRMED.